UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
HRISTO R. HRISTOV,

                    Plaintiff,

      -against-

DAVID L. ROARK, ET AL.,

                 Defendant.
------------------------------------------------------------x

**MEMORANDUM AND ORDER**

09-CV-2731

**TOWNES, United States District Judge:**

      The plaintiff, Hristo Hristov, seeks permanent immigration classification as an alien with extraordinary ability from the United States Citizenship and Immigration Services ("USCIS"), pursuant to Section 203(b)(1)(A) of the Immigration and Nationality Act (the "Act"), 8 U.S.C. § 1153(b)(1)(A).  After the defendant, David Roark, the director of the USCIS Texas Service Center (the "director") and Administrative Appeals Office ("AAO") dismissed the matter, the plaintiff appealed to this Court.  The director subsequently filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  This Court now converts the motion into a motion for summary judgment, and for the reasons set forth below, grants summary judgment in favor of the director.

## I.FACTUAL BACKGROUND

      The plaintiff, a native and citizen of Bulgaria, entered the United States with a visitor B2 visa on December 2, 1996.  (Letter from Hristov to the Hon. Sandra L. Townes dated Jan. 20, 2010 ("Jan. 20 Letter")).  The plaintiff thereafter applied for and was awarded a nonimmigrant O-1 visa as an alien with extraordinary ability.  His O-1 visa was extended four times and was valid from September 1, 1997, through August 15, 2008.  (*Id.*).

      On July 27, 2007, the plaintiff filed Form I-140 with the USCIS Nebraska Service Center, seeking employment-based permanent immigration classification as an alien with

"extraordinary ability" under Section 203(b)(1)(A) of the Act, 8 U.S.C. § 1153(b)(1)(A). At the time, the plaintiff was employed by Baez Entertainment 2000, Inc. ("Baez Entertainment") and listed his occupation as "Teacher of Dramatic Arts." (Permanent Record of USCIS ("R. of USCIS") at 4).

To support the petition, the plaintiff submitted evidence of his involvement as an actor, director, producer and screenwriter in a variety of organizations, plays and films, dating from his youth in Bulgaria through his recent work in the United States. He supplied evidence of his performance in plays entitled "Our Town" and "Romeo and Juliet" at the Benidorm International Theatre Festival in Benidorm, Spain; his work as a part-time lecturer at the Damascus National Theatre and National Academy for Theatre and Film Arts ("NATFA") in Sofia, Bulgaria; his leading role as Jesus Christ in the hit play entitled "The Secret Gospel of John" in Sofia, Bulgaria; his involvement in the making of the film entitled "The Definition of Insanity"; his membership in the Harlem Arts Alliance Dramatic Writing Academy ("Harlem Writing Academy") and Screen Actors Guild ("SAG"); his work with young actors as a volunteer at the Impact Repertory Theatre of Harlem ("Repertory Theatre"); and his supporting role in the play entitled "Marco the Prince." The plaintiff furnished evidence that, as an employee of Baez Entertainment, he primarily taught acting classes. (*Id.* at 138-41). While working for Baez Entertainment, he also wrote and directed television commercials and produced films, including "Racket," a twelve-minute award-winning film. (*Id.*).

On October 7, 2008, the director sent a letter to the plaintiff indicating that the director was unable to process the petition without further evidence and listed specific evidentiary deficiencies. (*Id.* at 51-53). The plaintiff thereafter responded to the director's request and supplied supplementary evidence. (*Id.* at 57-68). On November 24, 2008, the director dismissed

the petition, finding that the plaintiff furnished insufficient evidence to qualify as an alien with "extraordinary ability." (*Id.* at 142-47). The plaintiff appealed to the AAO and supplied a brief and supplementary evidence. (*Id.* at 149-52, 162-73). The AAO, however, affirmed the director's decision and dismissed the appeal on May 26, 2009. (*Id.* at 199-11). The plaintiff thereafter filed this action on June 25, 2009 and a corresponding complaint on December 25, 2009. The plaintiff was represented by counsel before the USCIS but pursues this appeal *pro se*.

On December 28, 2009, the director filed a pre-motion letter wherein he sought leave to move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). Thereafter, on January 20, 2010, the plaintiff filed a letter with this Court, requesting a hearing and responding to the director's pre-motion letter. In an order dated May 4, 2010, this Court denied the director's request to move for judgment on the pleadings but granted leave to move to dismiss under Fed. R. Civ. P. 12(b)(6). On June 21, 2010, the parties filed their respective motions and response papers. This Court took note that the director's motion to dismiss was styled as a motion for summary judgment, as the director relied heavily on documents outside the pleadings. (Docket No. 19 at 1). Given the plaintiff's *pro se* status, on April 28, 2011, this Court notified the plaintiff pursuant to Local Rule 12.1 of its intention to convert the director's submission into a motion for summary judgment. (*Id.*) The plaintiff filed an affidavit in response to the notification, reiterating his prior arguments. (Docket No. 20).

Prior to ruling on this matter, this Court also issued an order to show cause, granting the plaintiff thirty days to show why the action should not be dismissed for lack of subject matter jurisdiction. (Order to Show Cause dated Oct. 27, 2010, at 4-5). The plaintiff filed a letter in response to this Court's order, and the director filed a reply letter.

## II.JURISDICTION

Generally, there is a "strong presumption in favor of judicial review of administrative action." *Nethagani v. Mukasey*, 532 F.3d 150, 154 (2d Cir. 2008) (*quoting INS v. St. Cyr*, 533 U.S. 289, 298 (2001)).  In fact, the Administrative Procedure Act provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."  5 U.S.C. § 702.  Subject matter jurisdiction of the courts, however, has been limited in the immigration context.  The Act was amended to preclude judicial review of any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security," other than the grant of asylum.  8 U.S.C. § 1252(a)(2)(B)(ii).  "The phrase 'this subchapter' refers to subchapter II of Chapter 12 of Title 8 of the United States Code, which includes §§ 1151-1381." *Guyadin v. Gonzales*, 449 F.3d 465, 468 (2d Cir. 2006).  In this case, judicial review is not prohibited, because 8 U.S.C. § 1153(b)(1)(A), the statute under which the plaintiff sought preferential classification, does not specify that the decision is "in the discretion of the Attorney General," as required by 8 U.S.C. § 1252(a)(2)(B)(ii).

The "grant or denial of a visa preference classification is within the discretionary powers of the [USCIS]," *Fedin Bros. Co. LTD v. Sava*, 724 F.Supp. 1103, 1105 (E.D.N.Y. 1989) *affirmed by* 905 F.2d 41 (2d Cir. 1990); however, the question is not whether the USCIS has discretion to grant or deny a visa classification. *Nethagani*, 532 F.3d at 154.  Rather, the inquiry is limited to whether the language of the pertinent provision "'specifie[s]' that the 'decision' is 'in the discretion of the Attorney General.'"  8 U.S.C. § 1252(a)(2)(B)(ii); *Nethagani*, 532 F.3d

at 154.  As a result, this Court has subject matter jurisdiction and may review the agency's action.

### III. STANDARD OF REVIEW

Since the USCIS had discretion to grant or deny the petition, this Court's review is "limited to whether the decision of the [USCIS] was arbitrary, capricious or an abuse of discretion."  *Fedin Bros. Co.*, 724 F.Supp. at 1106 (citing 5 U.S.C. § 706(2)(A); *Pancho Villa Rest., Inc. v. U.S. Dep't of Labor*, 796 F.2d 596, 597 (2d Cir. 1986)).  Under this standard, reversal would require that this Court find that no reasonable fact finder could have come to the USCIS's erroneous conclusion.  *INS v. Zacarias*, 502 U.S. 478, 481 (1992); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto.*, 463 U.S. 29, 43 (1983) ("[T]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency . . . .").

As noted above, this Court notified the plaintiff pursuant to Local Rule 12.1 of its intention to convert the director's submission into a motion for summary judgment.  (Docket No. 19 at 1).  *See, e.g., In re G & A Books, Inc.*, 770 F.2d 288, 294-95 (2d Cir. 1985); *see also Green v. Doukas*, 2000 WL 236471, * 2 (2d Cir. 2000) (holding that a district court has discretion to convert a motion to dismiss into a motion for summary judgment).  The "essential inquiry" in exercising this discretion is whether the parties "should reasonably have recognized the possibility that the motion might be converted to one for summary judgment or [whether they were] taken by surprise and deprived of a reasonable opportunity to meet facts outside the pleading."  *In re G & A Books, Inc.*, 770 F.2d at 294-95.  Since both parties submitted extrinsic evidence to support their position, this Court can fairly convert the motion to dismiss into a summary judgment motion.  Fed. R. Civ. P. 56; *Id.*

Summary judgment is appropriate if the pleadings and record, when viewed in the light most favorable to the nonmoving party, demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex*, 477 U.S. at 323-24. However, when the moving party has met this initial responsibility, the nonmoving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." *Id.*; Fed. R. Civ. P. 56(e)(2). Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Lastly, "a reviewing court defers to the consideration accorded a statute by the agency in charge of its administration." *Bertrand v. Sava*, 684 F.2d 204, 217 (2d Cir. 1982). This Court's inquiry is limited to whether the agency's interpretation is "based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 843 (1984). Thus, even if this Court disagrees with the USCIS's statutory construction, it "may not substitute [its] own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.* at 844. "[P]etitioner . . . carries the burden of proving that the applicant is entitled to the visa classification." *Fedin Bros. Co., Ltd.*, 724 F.Supp. at 1105.

## IV. ANALYSIS

The plaintiff sought preferential classification as an "[a]lien[] with extraordinary ability" under 8 U.S.C. § 1153(b)(1)(A) of the Act. This classification is intended to be limited to individuals who have such "a level of expertise" that they are "one of that small percentage who

have risen to the very top of the field of endeavor."  8 CFR § 204.5(h)(2).  An alien fits within this classification if:

> (i) the alien has extraordinary ability in the sciences, arts, education, business, or athletics which has been demonstrated by sustained national or international acclaim and whose achievements have been recognized in the field through extensive documentation,

> (ii) the alien seeks to enter the United States to continue work in the area of extraordinary ability, and

> (iii) the alien's entry into the United States will substantially benefit prospectively the United States.

8 U.S.C. § 1153(b)(1)(A).  8 C.F.R. § 204.5(h)(3) further provides that "[a] petition for an alien of extraordinary ability must be accompanied by evidence that the alien has sustained national or international acclaim and that his . . . achievements have been recognized in the field of expertise."  This can be established in one of two ways.  The first is "evidence of a one-time achievement (that is, a major, international recognized award)."  *Id.*  The plaintiff did not make this evidentiary showing.  The second is to provide evidence of at least three of the following:

> (i) Documentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor;

> (ii) Documentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields;

> (iii) Published material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought. Such evidence shall include the title, date, and author of the material, and any necessary translation;

> (iv) Evidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought;

> (v) Evidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field;

(vi) Evidence of the alien's authorship of scholarly articles in the field, in professional or major trade publications or other major media;

(vii) Evidence of the display of the alien's work in the field at artistic exhibitions or showcases;

(viii) Evidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation;

(ix) Evidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field; or

(x) Evidence of commercial successes in the performing arts, as shown by box office receipts or record, cassette, compact disk, or video sales.

*Id.*

When reviewing the director's decision, the AAO first defined the occupation for which the plaintiff sought classification as an alien with "extraordinary ability" as teacher of the dramatic arts.  (R. of USCIS at 202).  The AAO then analyzed whether the plaintiff satisfied three of the criteria of 8 C.F.R. § 204.5(h)(3).  In analyzing the criteria, the AAO considered the plaintiff's work as a teacher but also extended its analysis to include the plaintiff's work as an actor and screenwriter.  (*Id.* at 202, 210).  The AAO found that the plaintiff fulfilled only one of the criteria, the seventh, and dismissed the appeal.  (*Id.* at 202-09).  The plaintiff now challenges the classification of teacher and factual findings regarding the criteria enumerated in 8 C.F.R. § 204.5(h)(3).

This Court, however, finds that the plaintiff has failed to raise any "genuine issue as to any material fact" and that the director is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex,* 477 U.S. at 323.  This Court affirms the AAO's determination that the plaintiff sought preferential treatment for his work as a teacher.  However, even taking into account a broader spectrum of the plaintiff's work, the evidence does not indicate that the plaintiff "has

sustained national or international acclaim," 8 C.F.R. § 204.5(h)(3), or is "one of that small percentage who [has] risen to the very top of" his field.  8 CFR § 204.5(h)(2).

## A.     Classification

The plaintiff disputes the ruling that only his work as a teacher be considered when assessing his petition.  He argues that review should have encompassed his work as an actor, teacher, director, screenwriter and producer, as these roles are inextricably linked and require the same skills and abilities.  (Pet'r Compl. at 5-6; Pet'r Aff. in Opp'n to Def. Mot. at 3).  The plaintiff also asserts that he sought this classification on Form I-140 and in his petition letter, which was filed with Form I-140, and that, although he wrote on Form I-140 that his occupation was  "Teacher of Dramatic Arts," he wrote that his non-technical job description was "Teacher of Acting, Screen Writing & Acting in movie projects developed by Baez Entertainment[]." (Pet'r Compl. at 6; Pet'r Aff. in Opp'n to Def. Mot. at 2).

The AAO found that the plaintiff sought preferential classification for his work as a teacher, because the plaintiff listed "Teacher of Dramatic Arts" as his occupation.  (R. of USCIS at 4, 201).  The AAO's decision centered on the construction of the second condition of 8 U.S.C. § 1153(b)(1)(A), which requires that the alien "continue [to] work in the area of extraordinary ability."  (*Id.* at 201).  The AAO reasoned that acting and teaching dramatic arts is not the same "area," because, while actors and teachers share knowledge of the arts, "the two rely on very different sets of basic skills."  (*Id.* at 201-02).

This Court is not permitted to conduct *de novo* review of the AAO's interpretation of 8 U.S.C. § 1153(b)(1)(A)(ii).  *Bertrand*, 684 F.2d at 217.  The inquiry is limited to whether the agency's interpretation was "reasonable" and "based on a permissible construction of the statute."  *Chevron U.S.A.*, 467 U.S. at 843.  In addition, the AAO's factual findings are to be

affirmed so long as a reasonable fact finder could have come to the same conclusion. *See Zacarias*, 502 U.S. at 481.

The Court affirms the AAO's decision in the instant case. First, the record supports the AAO's finding that the plaintiff sought preferential classification for his work as a teacher. The plaintiff listed his occupation on Form I-140 as "Teacher of Dramatic Arts." (R. of USCIS at 4). The plaintiff did provide the nontechnical job description of "Teacher of Acting, Screen Writing & Acting in movie projects . . . ."; yet, the evidence indicates that the plaintiff's primary responsibility as an employee of Baez Entertainment was teaching. (Pet'r Letter to USCIS dated July 27, 2007; R. of USCIS 4, 138-41).

Second, the AAO accurately noted that the second requirement of 8 U.S.C. § 1153(b)(1)(A) necessitates that the plaintiff "continue [to] work in the area of extraordinary ability." It was reasonable for the USCIS to interpret continuing to work in one's "area" as actually working in the same profession and not merely the same field. This ruling is consistent with *Lee v. Ziglar*, 237 F. Supp. 2d 914 (N.D. Ill. 2002), a case that addressed a similar issue, wherein the court held that it was reasonable for the USCIS to find that playing and coaching major-league baseball were not the same "area" of extraordinary ability. *Id.* at 917-18. The court reasoned that the alien's "extraordinary ability as a baseball player [did] not imply that he also [had] extraordinary ability in all positions or professions in the baseball industry such as a manager, umpire or coach." *Id.* at 918.

**B.     Criteria of 8 C.F.R. § 204.5(h)(3)**

Pursuant to 8 U.S.C. § 1153(b)(1)(A), aliens may obtain preferential classification on the basis of "extraordinary ability" if they can satisfy at least three of the ten criteria under 8 C.F.R. § 204.5(h)(3). The AAO assessed evidence relating to nine of the ten criteria. The AAO did not

address the sixth criterion, because the plaintiff did not present evidence or argument for that criterion.  The AAO found that the plaintiff satisfied only one of the criteria, the seventh, and dismissed the appeal.  (R. of USCIS at 208, 211).

The plaintiff now objects to the AAO's findings regarding the first through the fifth criteria and the seventh through the ninth criteria.  Surprisingly, the plaintiff objects to the AAO's finding regarding the seventh criterion; however, this Court finds no need to address the plaintiff's objection to that criterion, since the AAO already found that criterion to be satisfied.[1] As a result, this Court reviews each criterion, except for the sixth, for which the plaintiff never presented evidence or argument, the seventh, which the AAO found that the plaintiff satisfied, and the tenth, which the plaintiff has not challenged on appeal to this Court.  After reviewing the criteria, this Court grants summary judgment in favor of the director, as the plaintiff has failed to raise genuine issue of material fact showing that the decision of the USCIS was arbitrary, capricious or an abuse of discretion.  Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 323.

i.      *The First Criterion*

The first criterion requires "[d]ocumentation of the alien's receipt of lesser nationally or internationally recognized prizes or awards for excellence in the field of endeavor."  8 C.F.R. § 204.5(h)(3)(i).  The plaintiff claims that this criterion was satisfied by his receipt of award for three productions: (1) "Racket"; (2) "The Definition of Insanity"; and (3) "Our Town."  The plaintiff contends that the AAO wrongly referred to his award for "Our Town" as a "NAFTA award," when the award was actually from the Benidorm International Theatre Festival.  (Pet'r Compl. at 8).  The plaintiff also again challenges the AAO's classification of teacher, as applied to the awards for all three productions.  (*Id.* at 7).

---

[1]  The plaintiff argued that it was arbitrary and capricious for the AAO to find that his performance in "The Secret Gospel of John" was not "indicative of sustained acclaim in 2007 when the petition was filed," because the regulations do not specify time limits.  (Pet'r Aff. in Opp'n to Def. Mot. at 5).

In support of the criterion, the plaintiff first supplied a letter from Michael Baez, the president and chief executive officer of Baez Entertainment, wherein Michael Baez described the plaintiff as the producer and star actor of "Racket" and wrote that the film won awards for "Best Short Film" from The Director's Cut and "Best Cinematography" from the Texas Independent Film Festival.  (Baez Letter dated Oct. 21, 2008; R. of USCIS at 139).  Second, the plaintiff supplied a letter from Robert Morgolis, the president of Dirt Road Films and producer of "The Definition of Insanity," wherein he wrote that the plaintiff acted in the film and "agreed to work as [their] on-set acting coach and artistic consultant."  (R. of USCIS at 101-04).  Robert Morgolis also wrote that the "film received extraordinary critical acclaim," and listed the film's awards and favorable reviews.  (*Id.*).  Finally, the plaintiff submitted a letter from Professor Manuel Angel Conejero Tomas Dionis-Bayer, the founder and artistic director of the Benidorm International Theatre Festival, who wrote that the plaintiff won an award for best leading actor for his role in "Our Town" at his festival in 1993.  (*Id.* at 72-73).

In analyzing the awards for "Racket," the AAO noted that The Director's Cut is "purely . . . a vehicle to promote and further the careers of new filmmaking talent" and that, consequently, an award limited to new filmmakers is not a nationally recognized "award for which the most experienced and renowned filmmakers compete."  (*Id.*).  In addition, the AAO noted that the criterion requires "evidence of 'the alien's receipt' of qualifying prizes or awards," 8 C.F.R. § 204.5(h)(3)(i), and that neither of the awards were awarded to the plaintiff.  (*Id.* at 203).  Regarding "The Definition of Insanity," the AAO determined that the plaintiff was not officially credited for his work as an acting coach and artistic consultant and, again, found no evidence that the plaintiff received an award.  (*Id.*).  Review of the evidence supports the AAO's findings.  Neither The Director's Cut nor the Texas Independent Film Festival named the plaintiff as the

award recipient.  (*Id.* at 9, 25).  Additionally, there is no evidence that the plaintiff was officially credited or given an award for his involvement in "The Definition of Insanity."  (*Id.* at 101-04).

With regard to the plaintiff's award from the Benidorm International Theatre Festival, the AAO found that the award did not satisfy the criterion on three grounds: (1) the plaintiff failed to demonstrate that the award was nationally or internationally recognized; (2) Dionis-Bayer's letter implied that the award was limited to students; and (3) the award did not demonstrate sustained acclaim.  (*Id.* at 204).  The first two of the three findings were supported by the record. Even when asked to supply evidence that the award was nationally or internationally recognized, (*id.* at 52), the plaintiff failed to satisfy the request.  (*Id.* at 57-68).  In addition, Dionis-Bayer's letter supports the AAO's finding that the award was limited to students.

The AAO determined that, since the award was issued in 1993, fourteen years before the petition was filed, the award was not evidence of sustained acclaim.  R. of USCIS at 204.  The AAO, however, misinterprets the application of 8 C.F.R. § 204.5(h)(3).  The criteria does not require that "lesser nationally or internationally recognized" awards demonstrate sustained acclaim, as sustained acclaim is a component of the "final merits determination" and not relevant to the "antecedent procedural question of whether the plaintiff" has satisfied the criterion.  *See Kazarian v. U.S. Citizenship and Immigration Services*, 596 F.3d 1115, 1121 (2d Cir. 2010) (finding fault in the AAO's determination that without evidence that other scholars cited to the plaintiff's academic articles, the plaintiff had not satisfied the criterion because he did not show sustained acclaim).  Examination into sustained acclaim is a component of the "final merits determination" of whether the evidence shows extraordinary ability and not relevant to the "antecedent procedural question of whether the plaintiff" has satisfied the criterion. Id.  As a result, the AAO could not reasonably conclude that the evidence did not satisfy the criterion by

looking outside that criterion to the final merits determination.  Nevertheless, the AAO's error was harmless, as it found that the plaintiff failed to satisfy the criterion on two wholly independent grounds.  As written above, the AAO found that the award was restricted to students and insufficient evidence that the award was nationally or internationally recognized.  (R. of USCIS at 204).

Lastly, the plaintiff asserts that the AAO referred to his award as a "NATFA award," when in fact the award was from the Benidorm International Theatre Festival.  (Pet'r Compl. at 8).  The plaintiff is correct that the AAO mistakenly referred to the plaintiff's honor as the "NATFA award."  (R. of USCIS at 204).  The AAO's decision, however, demonstrates that the AAO understood the nature of the award and merely referred to it by an incorrect name.

ii.     *The Second Criterion*

The second criterion requires "[d]ocumentation of the alien's membership in associations in the field for which classification is sought, which require outstanding achievements of their members, as judged by recognized national or international experts in their disciplines or fields." 8 C.F.R. § 204.5(h)(3)(ii).  The plaintiff claims that this criterion was satisfied by his (1) membership in SAG; (2) membership in the Harlem Writing Academy; and (3) work as a lecturer at NATFA.  (Pet'r Compl. at 7-8).  On the subject of SAG, the plaintiff contends that the director's failure to mention his membership amounted to an abuse of discretion, because it is one of the most reputable guilds and to be a member is an honor.  (*Id.* at 9).  Regarding the Harlem Writing Academy, the plaintiff claims that the director undervalued his membership and contends that the director wrongly found no evidence that national or international experts made membership decisions.  (*Id.* at 7-8; R. of USCIS at 114).  The plaintiff lastly claims that the director "disregarded" his work as a lecturer at NATFA.  (Pet'r Compl. at 8).

In support of the criterion, the plaintiff first supplied a copy of his SAG membership card.  (R. of USCIS at 12).  The plaintiff also supplied a letter from Edward Pomerantz, the founder and director of the Harlem Writing Academy, wherein he listed its faculty and described membership as requiring "evidence of an extraordinary gift for screenwriting . . . ."  (*Id.* at 195-98).  Additionally, the plaintiff submitted a letter from Voza Rivers, a founding member and executive producer of the Harlem Arts Alliance, who wrote that the plaintiff was chosen from an overwhelming number of applicants.  (*Id.* at 194).  Rivers further described the Academy as a "workshop" for which the plaintiff "has been enrolled."  (*Id.*).  Finally, the Plaintiff supplied a letter from Hristo Rukov, a professor at NATFA, who stated that upon graduating from the Academy, the plaintiff "was asked to work as a part-time lecturer in [a]cting," and that the plaintiff's "students loved him and believed in his creative ambitions."  (*Id.* at 79).

The plaintiff, however, may not assert these claims on appeal to this Court, because they were abandoned when the plaintiff failed to assert them on appeal to the AAO.  *Getty Oil Co. v. Andrus*, 607 F.2d 253, 255-56 (9th Cir. 1979) (stating that "[s]imple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.") (quoting *United States v. L.A. Tucker Truck Lines*, 344 U.S. 33, 37 (1952)).  When appealing the director's decision to the AAO, the plaintiff did not challenge the director's findings in regard to this criterion.  (R. of USCIS at 151, 162-73).

The plaintiff contends that he may assert the claims because "[t]here is not even one documented statement . . . that states [his] decision to abandon any of [his] claims."  (Pet'r Aff. in Opp'n to Def. Mot. at 6).  He misunderstands the process upon which a claim is waived.  The

law does not require the plaintiff to affirmatively waive claims; instead, he waives claims if he fails to assert them on appeal.  *See Getty Oil Co.*, 607 F.2d at 255-56.

Additionally, even if this Court were to address the merits of the claim, this Court would affirm the USCIS's decision.  First, the plaintiff challenges the findings of the director, and, at this juncture, this Court reviews the decision of the AAO, not the director.  *See Kazarian*, 596 F.3d at 1121-22 (reviewing only the determinations of the AAO and not the director).[2]  If the plaintiff wanted to challenge the director's finding, he should have raised the claims before the AAO.

  *iii.*  *The Third Criterion*

The third criterion requires evidence of "[p]ublished material about the alien in professional or major trade publications or other major media, relating to the alien's work in the field for which classification is sought."  8 C.F.R. § 204.5(h)(3)(iii).  The regulation further provides that "[s]uch evidence shall include the title, date, and author of the material, and any necessary translation."  *Id.*

On appeal to this Court, the plaintiff challenges the decisions of both the director and AAO.  First, regarding the AAO's determination, the plaintiff contends the AAO incorrectly found that the "older" articles submitted by the plaintiff did not demonstrate sustained acclaim. (Pet'r Compl. at 9-10).

In support of this criterion, the plaintiff submitted articles about both himself and films and plays in which he participated.  The evidence submitted consisted of (1) an article in the newspaper *Duma*, published in 1995, about the plaintiff's short film entitled "Wake up the Bride," which was chosen to be shown at a film festival in Valencia, Spain, (R. of USCIS at 13);

---

[2] Since this Court reviews the determinations of the AAO, this Court will note but not consider the plaintiff's challenges to the determinations of the director.

(2) an article in the newspaper *Standart* entitled *Hristov Roussev: My Jesus an Attempt to Show the Human in the Symbol*, published in 1995, about the plaintiff's role in "The Secret Gospel of John," (*id.* at 16-20); (3) a two sentence excerpt from an article in the newspaper *24 Hours*, published in 1995, stating that the plaintiff would be playing Jesus Christ in the play, (*id.* at 26); (4) an article about the Lake Placid Film Festival in the newspaper *Times Union*, published in 2000, (*id.* 30-33); (5) reviews of a play entitled "Marco the Prince" in which the plaintiff was a supporting actor, published in 2008, (*id.* at 87-96); and (6) a photograph of the plaintiff appearing on the television program "The New Yorkers." (*Id.* at 29).

The director informed the plaintiff that his petition was deficient and asked him to provide evidence that the articles were in "major" Publications. (*Id.* at 52). In response, the plaintiff failed to supply the requested evidence but, instead, furnished the reviews of "Marco the Prince." (*Id.* at 60).

The plaintiff may not assert his claims because the plaintiff abandoned them when he failed to assert them on appeal to the AAO. *Getty Oil Co.*, 607 F.2d at 255-56. (R. of USCIS at 162-73). Even if the plaintiff had not abandoned the claims, this Court would affirm the determinations of the director and AAO. First, the plaintiff is correct in that the AAO incorrect found that the "older" articles did not demonstrate sustained acclaim in 2007, the year the petition was filed. Pet'r Compl. at 9-10; R. of USCIS at 206. The plaintiff is correct. As noted above, the AAO wrongly required a showing of sustained acclaim in order to satisfy the criterion, as it may not look at the requirements beyond the criterion to determine if the criterion was satisfied. *See Kazarian v.*, 596 F.3d at 1121.

Nonetheless, the AAO's mistake was harmless, as the AAO found that the plaintiff failed to satisfy the criterion on a completely independent ground. The third criterion requires

evidence that the articles be both (1) in "major" publications and (2) "about" the plaintiff.  8 C.F.R. § 204.5(h)(3)(iii).  The AAO found insufficient evidence that the articles were in major publications.  (R. of USCIS at 206).  Since the articles were published in 1995, 2000 and 2008, this Court interprets the "older" articles, the ones the AAO determined were published in non-major publications, to be those published in 1995 and 2000.  These articles were published by *Duma*, *Standart*, *24 Hours* and *Times Union*, and the record contains no evidence beyond the four corners of the articles that the newspapers were major.  Moreover, the USCIS requested evidence about the publications, and the plaintiff failed to furnish additional information.  (*Id.* at 52).  Thus, this Court affirms the AAO's determination that the criterion was not satisfied.

> iv.    *The Fourth Criterion*

The fourth criterion requires "[e]vidence of the alien's participation, either individually or on a panel, as a judge of the work of others in the same or an allied field of specification for which classification is sought."  8 C.F.R. § 204.5(h)(3)(iv).  On appeal, the plaintiff challenges the director's finding that the plaintiff sought preferential classification as a teacher.  (Pet'r Compl. at 10).  The plaintiff effectively asks, yet again, that this Court apply a broader categorization that would encompass his work as an actor, teacher, director, screenwriter and producer.  (R. of USCIS at 145).

The plaintiff submitted a letter written by Marian Savov, the artistic director of the Drama Theater "Sava Ognyanov," wherein Savov wrote that, in the summer of 1996, when the plaintiff decided to give up his lead role as Jesus Christ in "The Secret Gospel of John," the plaintiff "headed" a five-member "jury" to select his replacement.  (*Id.* at 82-83).

The plaintiff, however, may not assert his claim because it was abandoned when he failed to assert it on appeal to the AAO.  *Getty Oil Co.*, 607 F.2d at 255-56.  (R. of USCIS at 162-73).

This Court reviews the determination of the AAO, not the director.  *See Kazarian*, 596 F.3d at 1121-22.

        *v.*        *The Fifth Criterion*

The fifth criterion requires "[e]vidence of the alien's original scientific, scholarly, artistic, athletic, or business-related contributions of major significance in the field."  8 C.F.R. § 204.5(h)(3)(v).  The plaintiff claims that the AAO incorrectly wrote that the Repertory Theatre where he volunteered was operated by Columbia University, when, in reality, the group simply rehearses at Columbia University.  (Pet'r Compl. at 11).  The plaintiff also claims that the AAO wrongly stated that the plaintiff was a "student" at Columbia University.  (*Id.*).

In support of the criterion, the plaintiff submitted a letter dated May 19, 2006, written by Jamal Joseph, the founder and executive artistic director of the Repertory Theatre, wherein Joseph asserts that the Repertory Theatre provided free musical theater training to young actors who have obtained admittance and scholarships to dramatic arts and music programs at the collegiate level.  (*Id.* at 179).  The letter noted that  the theater group performed at major venues, including Lincoln Center, the Public Theatre, the Apollo Theater, the N.Y.C. Marathon and Kennedy Center; was "featured" on Good Morning America and Nightline; and "appeared" in an HBO film and a PBS film.  R. of USCIS at 179.  Joseph added that the plaintiff was involved in the Repertory Theatre as a volunteer writer, director and acting coach, who directed two productions that received awards from the Harlem Arts Alliance and Audience Development Coalition, and whose group received a Union Square Award under the plaintiff's "artistic leadership" received.  (*Id.*; Joseph Letter dated May 19, 2006).

The plaintiff, however, may not assert his claims with this Court, as the plaintiff abandoned them by failing to assert them on appeal to the AAO.  *Getty Oil Co.*, 607 F.2d at 255-

56. (R. of USCIS at 162-73).  Further, the AAO determined that he failed to demonstrate that his work had "major significance" in his field.  (*Id.* at 207).  The AAO reasoned that in order for a contribution to have "major significance," it must have had a "demonstrable impact in the" field, and "the plaintiff [had] not demonstrated that he [was] known for an influential original acting or screenwriting method or [had] otherwise impacted the field at the national or international level."  (*Id.*).

   viii.    *The Eighth Criterion*

   The eighth criterion requires "[e]vidence that the alien has performed in a leading or critical role for organizations or establishments that have a distinguished reputation."  8 C.F.R. § 204.5(h)(3)(viii).  In response to the director's instant motion, the plaintiff points out that the director's prior determination misspelled the name of the Repertory Theatre by spelling "Repertory" as "Reparatory."  (Pet'r Aff. in Opp'n to Def. Mot. at 7).  He contends that, given the Repertory Theatre's distinguished nature, the misspelling diminished the reputation of the Theatre in the eyes of the director.  (*Id.*).

   However, again, at this juncture, this Court reviews the AAO's, not the director's, determination.  *See Kazarian*, 596 F.3d at 1121-22.  In addition, the plaintiff cannot raise new claims in response to the motion.  *Gilmour v. Gates, McDonald and Co*., 382 F.3d 1312, 1315 (11th Cir. 2004); *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090-91 (10th Cir. 1991); *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990).  The plaintiff did not assert the claim on appeal to this Court but, instead, asserted it for the first time in his affirmation in opposition to the director's motion.  (Pet'r Aff. in Opp'n to Def. Mot. at 7).  Consequently, the plaintiff is barred from bringing this claim before the Court.

   ix.    *The Ninth Criterion*

The ninth criterion requires "[e]vidence that the alien has commanded a high salary or other significantly high remuneration for services, in relation to others in the field."  8 C.F.R. § 204.5(h)(3)(ix).  The plaintiff contends that, with regard to his performance in "The Secret Gospel of John," the AAO misinterpreted a letter written by Marian Savov, the artistic director of Drama Theatre "Savov Ognyanov," as stating that the plaintiff was paid ten percent more than the typical actor for his performance, when, in fact, the letter indicted that the plaintiff was paid ten times as much.  (Pet'r Compl. at 11; Pet'r Aff. in Opp'n to Def. Mot. at 6).  He may not assert this claim on appeal, because the plaintiff did not assert it on appeal to the AAO.  *Getty Oil Co.*, 607 F.2d at 255-56.  (*Id.* at 162-73).

The record shows that, where appropriate, the AAO gave plaintiff's supporting letters ample weight.  The AAO primarily relied upon Jamal Joseph's letters in determining whether the plaintiff satisfied the fifth and eight criteria.  (R. of USCIS at 206-08).  The AAO discussed the letters of Voza Rivers and Edward Pomerantz jointly to determine if the plaintiff was a member of an association that required "outstanding achievements of their members" pursuant to the second criterion.  (*Id.* at 204-05).  Baez's letters were utilized to describe "Racket" and led the AAO to find that the seventh criterion was satisfied.  (*Id.* at 210).  The AAO did not discuss Congressman Rangel's letter in its decision, but the letter, while complementary of the plaintiff, does not indicate that the Congressman had any first-hand knowledge of the plaintiff's work.

Lastly, the plaintiff contends that a letter written by Trezana Beverly, where Beverly described the plaintiff's strong performance in "Marco the Prince," was arbitrarily ignored. (Pet'r Aff. in Opp'n to Def. Mot. at 7).  The plaintiff, however, has overlooked 8 C.F.R. § 103.2(b)(1).  The provision provides that "[a]n applicant or plaintiff must establish that he or she is eligible for the requested benefit at the time of filing the application or petition."  In this case,

the petition was filed on July 27, 2007, and the premiere of "Marco the Prince" did not occur until a year later in July of 2008.  (R. of USCIS at 87-96).  Thus, the AAO did not err in failing to consider Beverly's letter.

In summary, this Court affirms the AAO's findings that the plaintiff did not satisfy the above criteria.  The AAO found that the plaintiff satisfied the seventh criterion, (*id.* at 208), but this, without more, is not sufficient, as the plaintiff had to satisfy three criteria in order to be classified as an alien with "extraordinary ability."  8 C.F.R. § 204.5(h)(3).  The evidence in the record indicates that the plaintiff is a talented dramatic artist; however, it fails to suggest that he "has sustained national or international acclaim," *Id.*, or that he is "one of that small percentage who have risen to the very top of" his field.  8 CFR § 204.5(h)(2).

### VI.CONCLUSION

For the foregoing reasons, this Court grants summary judgment in favor of the director and dismisses the plaintiff's complaint.

**SO ORDERED.**

_____/s/_____

SANDRA L. TOWNES
United States District Judge

Dated: September 30, 2011
        Brooklyn, New York